**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAURA K. SORENSEN,

      Plaintiff-Appellant,

v.

UNIVERSITY OF UTAH HOSPITAL,

      Defendant-Appellee.

No. 98-4068

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 95-CV-479-K)**

Kathryn Collard, The Law Firm of Kathryn Collard, L.C., Salt Lake City, Utah, for Plaintiff-Appellant.

Nancy L. Kemp, Assistant Attorney General, (Jan Graham, Utah Attorney General, with her on the brief), Salt Lake City, Utah, for Defendant-Appellee.

Before **TACHA**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

**BALDOCK**, Circuit Judge.

Plaintiff Laura K. Sorensen brought suit against her former employer, Defendant University of Utah Hospital, alleging discrimination in violation of the Americans with Disabilities Act (ADA). The district court concluded that as a matter of law Plaintiff was

not disabled under the ADA and granted summary judgment in favor of Defendant. Plaintiff appeals. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

Defendant employed Plaintiff as a nurse from August 1990 through March 1994. Plaintiff initially worked as a Clinical II Nurse in the burn unit. In December 1991, Defendant hired Plaintiff as an AirMed Flight Nurse. This required special certification as a Certified Emergency Nurse and training in Advance Burn Life Support, as well as surgical procedures which are not generally required for nursing positions in the hospital units.

On October 30, 1993, Plaintiff's treating physician, Dr. John Barbuto, diagnosed her with Multiple Sclerosis (MS). During her subsequent five-day hospitalization, Plaintiff was unable to perform any life activities. Upon Plaintiff's release from the hospital, her doctor cleared her to return to work. Plaintiff contacted her immediate supervisor at the hospital, Janet Smith, and informed her that she intended to return to work on November 12, 1993. Smith told Plaintiff that she could not return to work until she obtained a letter from her doctor stating that she was physically able to return to her position as a flight nurse. Dr. Barbuto gave her a work release. Smith, however, remained concerned about Plaintiff's ability to perform the work. Smith, together with Plaintiff's other supervisor, Dr. Stephen Hartsell, Director of the AirMed Department, compiled a list of job qualifications to present to Dr. Barbuto. After reviewing the

conditions of the job, Dr. Barbuto stated that he could not provide Plaintiff with a work release.

Neurologist Dr. John W. Rose also examined Plaintiff. During her evaluation period, Plaintiff returned to a schedule of work as a regular nurse in the burn unit, the surgical intensive care unit, and the emergency room. After evaluating Plaintiff, Dr. Rose informed Dr. Hartsell in December 1993 that she could return to work as a flight nurse. Nevertheless, Dr. Hartsell remained concerned about patient safety and the risks involved with allowing Plaintiff to return as a flight nurse. Dr. Hartsell then discussed the essential functions of the job with Dr. Rose and followed up with a letter setting forth the job requirements and his specific concerns. Dr. Rose believed Plaintiff could essentially perform the duties of a flight nurse, but he could not guarantee that she would never suffer from an episode or a problem associated with her MS while on duty. Dr. Hartsell believed this safety concern justified preventing Plaintiff from returning to her job.

At the end of February 1994, Defendant had neither returned Plaintiff to her job as flight nurse, nor made a final determination as to whether to return her to her job as flight nurse. On March 3, 1994, Plaintiff submitted a letter of resignation to Defendant which she alleges constituted a constructive discharge.

Plaintiff filed a complaint against Defendant alleging that she was a disabled person under the ADA, 42 U.S.C. § 12101; 29 C.F.R. § 1630.2(g), and that Defendant had discriminated against her because of her disability. Defendant filed a motion for

summary judgment and Plaintiff filed a cross-motion for summary judgment. The district court found as a matter of law that Plaintiff did not establish a prima facie case of disability discrimination because she was not disabled under the ADA. First, the court found as a matter of law that Plaintiff did not suffer from an impairment that substantially limited a major life activity. Further, the court found as a matter of law that Defendant did not regard Plaintiff as substantially limited in performing a class of jobs. Because Plaintiff did not establish a prima facie case, the district court granted Defendant's motion for summary judgment. Plaintiff appeals claiming the district court erred in granting summary judgment for Defendant on the issue of whether Plaintiff was disabled under the ADA.

We review the grant of summary judgment de novo, applying the same legal standard as the district court. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), petition for cert. filed, 67 U.S.L.W. 3733 (May 24, 1999). A summary judgment is properly granted where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "'[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' to survive summary judgment." McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting Celotex Corp. v.

4

Catrett, 477 U.S. 317, 324 (1986)).

## II.

The ADA prohibits employers from discriminating against individuals on the basis of disability. 42 U.S.C. § 12101. Numerous Tenth Circuit cases state the elements of a prima facie case under the ADA: "[A] plaintiff must demonstrate (1) that [s]he is 'disabled' within the meaning of the ADA, (2) that [s]he is qualified--with or without reasonable accommodation; and (3) that [s]he was discriminated against because of h[er] disability." Butler v. City of Prairie Village, 172 F.3d 736, 748 (10th Cir. 1999) (quoting Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997)); see also Hardy v. S.F. Phosphates Ltd. Co., __ F.3d __, __, 1999 WL 401722, at *7 (10th Cir. 1999). The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff concedes that she does not have a present impairment that substantially limits a major life activity under subsection (A). Rather, Plaintiff argues that she has a record of such an impairment under subsection (B) and that Defendant regarded her as having such an impairment under subsection (C). The issue is whether the district court properly determined as a matter of law that Plaintiff was not disabled under (B) or (C).

### A. Record of Impairment

Under the ADA, the definition of disability includes having a record of an

impairment that substantially limits a major life activity of an individual. 42 U.S.C.

§ 12102(2)(B); see Pack v. Kmart Corp., 166 F.3d 1300, 1304 (10th Cir. 1999). To have

a record of such an impairment, a plaintiff must have a history of, or been misclassified as

having, an impairment that substantially limited a major life activity. 29 C.F.R. §

1630.2(k); see also Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220,

1229 (11th Cir. 1999). The EEOC regulations make clear that the impairment indicated

in the record must be one that substantially limited a major life activity. Id; see also 29

C.F.R. § 1630, App. § 1630.2(k)(2); Hilburn, 181 F.3d at 1229 ("Regardless of whether

Hilburn is proceeding under a classification or a misclassification theory, the record-of-

impairment standard is satisfied only if she actually suffered a physical impairment that

substantially limited one or more of her major life activities.").

Accordingly, Plaintiff must establish that her MS at some point substantially

limited a major life activity. See EEOC v. R.J. Gallagher Co., 181 F.3d 645, 655 (5th Cir.

1999) (concluding a record of a cancer diagnosis was insufficient to establish disability

under § 12101(2)(B); plaintiff must show record of an impairment that substantially

limited any life activities). Plaintiff argues that she had such an impairment during the

time she was hospitalized. Therefore, Plaintiff argues that her hospitalization, diagnosis,

and communications to her supervisors constitute a record of such an impairment.

For an impairment to substantially limit a major life activity, the individual must

be unable to perform, or be significantly limited in the ability to perform, an activity

6

compared to an average person in the general population. 29 C.F.R. § 1630.2(j); see also Sutton v. United Airlines, Inc., 119 S. Ct. 2139, 2145 (1999). The EEOC has established the following factors to be considered in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R § 1630.2(j)(2); see also Pack, 166 F.3d at 1305-1306. For example, the EEOC Interpretive Guidance describes a broken leg that takes eight weeks to heal as an impairment of fairly brief duration. 29 C.F.R. § 1630, App. § 1630.2(j).

Plaintiff claims that her MS substantially limited a major life activity during her five day hospitalization beginning October 30, 1993 and subsequent recovery time. The nature and severity of Plaintiff's impairment during this time weigh in favor of finding that her impairment substantially limited a major life activity. Plaintiff could not perform any life activities during her hospitalization. The duration and long term impact of Plaintiff's impairment, however, weigh against finding that her impairment substantially limited a major life activity.

Plaintiff maintains that she was ready to return to work on November 12, eight days after she was released from the hospital. Further, Plaintiff states that she does not presently have an impairment which substantially limits a major life activity.

7

Consequently, Plaintiff's impairment from October 30, 1993 through November 15, 1993 was of brief duration. Plaintiff's hospitalization and MS symptoms substantially limited her major life activities for only a limited period of time.

As for any permanent impact of her impairment, Plaintiff claims that she is currently physically qualified to perform the duties of flight nurse. As such, Plaintiff retains little, if any, long term impact resulting from her impairment. Because Plaintiff's hospitalization and MS symptoms affected her for only a brief period of time and do not presently impact her ability to perform the job, Plaintiff did not suffer an impairment that substantially limits a major life activity under the ADA.

Similarly, Plaintiff presented no evidence that she was misclassified as having an impairment that substantially limits a major life activity. Her record of impairment accurately described her five day hospitalization and subsequent recovery time. As discussed above, her impairment did not substantially limit a major life activity. Because Plaintiff never had the requisite impairment and was not misclassified as having such an impairment, she does not have a record of such an impairment under subsection (B).

### B. Regarded as Disabled

Under the ADA, "disability" also includes "being regarded as having" an impairment that substantially limits one or more of the major life activities. 42 U.S.C. § 12101(C). The Supreme Court has stated that a person is regarded as disabled within the meaning of the ADA if "(1) a covered entity mistakenly believes that a person has a

8

physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities."  Sutton v. United Airlines, Inc., 119 S. Ct. 2139, 2149-50 (1999).

Plaintiff argues that under subsection (C), Defendant regarded her as having an impairment that substantially limited the major life activity of working because Defendant did not return her to her position as flight nurse.  The EEOC and the Supreme Court have discussed the requirements to establish a disability under subsection (C) when the plaintiff claims the life activity regarded as impaired is the activity of working.  See Sutton, 119 S. Ct. at 2149-52; 29 C.F.R. § 1630.2(j).  The EEOC regulations provide,

> With respect to the major life activity of working-- (i) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3) (emphasis added).

In Sutton, the Supreme Court considered the claim of plaintiffs who alleged that the defendant regarded their poor vision as precluding them from holding positions as "global airline pilot."  The Supreme Court concluded that the position of global airline pilot is a single job and a number of other positions utilizing plaintiffs' skills were available, including regional pilot and pilot instructor.  Id.  The Court indicated that "[w]hen the major life activity under consideration is that of working, the statutory phrase

9

'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton, 119 S. Ct. at 2151.[1] Further, the Supreme Court stated, "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Id.

Sutton is consistent with the EEOC's guidelines. According to the EEOC's Interpretive Guidance, "[A]n individual who cannot be a commercial airline pilot because of a minor vision impairment, but who can be a commercial airline co-pilot or a pilot for a courier service, would not be substantially limited in the major life activity of working." Id. (quoting 29 C.F.R. § 1630, App. § 1630.2).

Based on the Supreme Court's analysis in Sutton and the EEOC's pilot example, Plaintiff fails to establish a disability under subsection (C) because she has not demonstrated that Defendant regards her as having a physical impairment that substantially limits the major life activity of working. Plaintiff alleges only that Defendant regards her MS as precluding her from holding the position of flight nurse. Because the position of flight nurse is a single job, this allegation does not support the claim that Defendant regards Plaintiff as having a substantially limiting impairment.

---

[1] Because both parties accepted the EEOC regulations as valid, the Supreme Court did not decide what deference they were due, if any. Id. at 2145. Consequently, the Court assumed without deciding that the EEOC regulations were valid. Id. at 2151. The parties in this case do not challenge the EEOC regulations. Plaintiff does not challenge the EEOC Interpretative Guidance.

See Sutton, 119 S. Ct. at 2151; 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). Rather, Defendant provided Plaintiff with numerous other opportunities to work as a nurse. In fact, Plaintiff worked for Defendant as a nurse in the burn unit, the surgical intensive care unit, and the emergency room following her MS diagnosis and hospitalization. Plaintiff has not distinguished the flight nurse position from the class of regular nurse jobs Defendant permitted her to perform. Accordingly, the district court properly concluded as a matter of law that Plaintiff did not establish that she is disabled under subsection (C) of the ADA.

AFFIRMED.