William Wayne SINK, Plaintiff,

v.

**WAL–MART STORES, INC., Defendant.**

No. 00–2174–JWL.

United States District Court, D. Kansas.

June 8, 2001.

John Harl Campbell, David T. Holt, Campbell, Holt & Assoc., Kansas City, MO, Mark A. Corder, Olathe, KS, for Plaintiff.

Alan L. Rupe, Michael C. Gillispie, Georgina R. Adami, Kelly S. Herzik, Husch & Eppenberger, LLC, Wichita, KS, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff William Wayne Sink filed suit against defendant Wal–Mart Stores, Inc. alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. Specifically, plaintiff claims that defendant refused to permit plaintiff to return to work following a medical leave of absence and ultimately terminated his employment because he had a "record of" disability and/or because he was "regarded as" disabled. Plaintiff further asserts that defendant retaliated against him in various respects because plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). This matter is presently before the court on plaintiff's motion for partial summary judgment (Doc. 47) and defendant's motion for summary judgment (Doc. 50). Defendant moves for summary judgment on all of plaintiff's claims. Plaintiff moves for summary judgment on only one of his retaliation claims.

As set forth in more detail below, plaintiff's motion for partial summary judgment is denied and defendant's motion for summary judgment is granted in part and denied in part. Specifically, defendant's motion is granted on all claims except plaintiff's retaliation claim based on defendant's listing plaintiff as ineligible for rehire. Both parties' motions are denied on this claim. Plaintiff, however, is not entitled to recover compensatory or punitive damages in connection with this claim. Moreover, because entitlement to a jury trial for an ADA claim is contingent upon entitlement to compensatory and punitive damages, see 42 U.S.C. § 1981a(c), a trial of plaintiff's claim will be to the court. Finally, because plaintiff has not shown that he suffered any actual damages as a result of defendant's listing him as ineligible for rehire, plaintiff's remedy will be limited to declaratory and/or injunctive relief should he establish at trial that defendant is liable for retaliation.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff began his employment with defendant in July 1997 as a Loss Prevention Associate in defendant's distribution center in Ottawa, Kansas. On January 17, 1998, plaintiff requested and began a medical leave of absence to recover from a stroke. According to Dr. David Edalati, plaintiff's treating physician, plaintiff's stroke caused weakness in plaintiff's left arm and left leg. After what Dr. Edalati described as "rather extensive rehab," plaintiff was released to return to work without medical restrictions on April 24, 1998.

On February 4, 1999, plaintiff requested and began another medical leave of absence to recover from another stroke. According to Dr. Edalati, the second stroke was similar to the first one in that the stroke caused weakness in plaintiff's left arm and left leg. Dr. Edalati further testified that plaintiff "recovered more rapidly than the first time" and that the second stroke "didn't affect [plaintiff] as badly, as severely, and he recovered quickly." When asked to describe the extent of plaintiff's recovery following both strokes, Dr. Edalati testified as follows:

Completely. Basically he recovered. He had very, very mild weakness, but physi-

cal therapy worked with him pretty well and he was extremely-it was extremely slight, and on his exam-he recovered pretty much completely.

Dr. Edalati released plaintiff to return to work without medical restrictions on May 6, 1999. On that same day, plaintiff obtained a release to work from his cardiologist, Dr.Sherwani.[1] Dr. Sherwani's release stated that plaintiff was restricted to "activity as tolerated."

On May 8, 1999, plaintiff returned to work. During this same time frame, Steve Harris, defendant's Personnel Coach at the Ottawa distribution center and the individual responsible for administering medical leaves of absence, reviewed plaintiff's releases. Mr. Harris determined that Dr. Sherwani's release was ambiguous and in conflict with Dr. Edalati's release. In an effort to obtain clarification with respect to Dr. Sherwani's release, Mr. Harris contacted Dr. Sherwani's office. Ultimately, defendant forwarded to Dr. Sherwani a list of plaintiff's job expectations so that Dr. Sherwani could provide a "more definitive" work release. On May 11, 1999, Dr. Sherwani released plaintiff to work with the restriction that plaintiff could not lift more than 30 pounds. As noted by Dr. Sherwani on the release itself, Dr. Sherwani's release was "from a cardiovascular standpoint." Although plaintiff testified that he "never had to lift anything very heavy" during his employment with defendant, defendant's evidence shows that an essential function of plaintiff's job as a Loss Prevention Associate is having to occasionally lift up to 50 pounds. In light of this essential function and Dr. Sherwani's release, Mr. Harris determined that plaintiff could not meet the essential requirements of his job.

Thus, defendant required plaintiff to return to his medical leave of absence until he could acquire a full release to return to work or provide information that his condition was permanent or long-term.[2] Because defendant did not receive any information from plaintiff or Dr. Sherwani that plaintiff's restriction was permanent or long-term and did not receive any information that plaintiff had obtained a full release, plaintiff remained on leave.

On September 28, 1999, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission alleging that he had been discriminated against on the basis of a disability in that defendant refused to permit plaintiff to return to work and threatened plaintiff with termination. Plaintiff filed his charge with the EEOC on September 30, 1999. On February 4, 2000, one year had passed since plaintiff began his leave of absence. Consistent with defendant's policy to terminate the employment of any employee who has been on a medical leave of absence for more than one year, plaintiff's employment was terminated on February 8, 2000. Defendant's exit interview form with respect to plaintiff indicates that plaintiff's discharge was a "voluntary termination for failure to return from a leave of absence." The form notes that plaintiff was not eligible for rehire. When asked about plaintiff's ineligibility for rehire, Mr. Harris testified that he was not sure whether he had made the notation that plaintiff was not eligible for rehire or whether Barbara Clover, one of defendant's benefits associates, who had filled out another portion of the exit interview form, had noted that plaintiff was not eligible for rehire. He testified, however, that he signed the exit

1. Plaintiff apparently saw Dr. Sherwani on occasion for a prior heart condition.

2. According to Mr. Harris, once an employee presents documentation of a permanent restriction, defendant "would look at whether there needed to be an accommodation made for the alleged permanent restriction" in accordance with defendant's policy concerning "reassignment due to a medical disability."

interview form. When asked whether he knew why plaintiff's form was marked "ineligible for rehire," Mr. Harris testified:

Well, the only thing that I can assume or could think of is that it would probably not-not be a reasonable thing to do-to rehire someone that had previously sued you. Probably wouldn't be a prudent thing to do. And I don't know if I checked [the box indicating ineligible for rehire] or if I told Barb to check it, but it's checked as no rehire with the intent to not rehire him.

Mr. Harris then clarified that he was referring to plaintiff's charge of discrimination when he testified about plaintiff having "previously sued" defendant.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Procedural Considerations

■ As an initial matter, defendant maintains that summary judgment is appropriate on plaintiff's ADA discrimination claims because plaintiff failed to exhaust his administrative remedies with respect to these claims. Specifically, defendant contends that plaintiff failed to allege in his EEOC charge that defendant discriminated against him on the basis of a "record" of disability or that de-

fendant "regarded" plaintiff as disabled.[3] Rather, according to defendant, plaintiff alleged only that he had an actual disability and that defendant discriminated against him on the basis of that actual disability. Defendant further contends that plaintiff's "record" and "regarded as" theories of disability discrimination are not reasonably related to the allegations in plaintiff's EEOC charge. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir.1999) (a complaint may include any claims not listed in the administrative charge as long as such claims are "reasonably related" to the allegations in the charge).

A review of plaintiff's EEOC charge, liberally construed, reveals that plaintiff has properly exhausted his administrative remedies with respect to his discrimination claims. With respect to plaintiff's "record of" disability theory, his charge references the fact that he was retired from the State of Kansas with a permanent disability (in other words, that plaintiff had a history of having a disability) and that defendant had knowledge of this fact. With respect to plaintiff's "regarded as" theory, his charge states that plaintiff's "managers refused to accept a release from my physician stating that I was able to work." This statement indicates that plaintiff, while not in fact disabled, was nonetheless refused permission to return to work based on management's perception that he was in fact disabled. This is the essence of a "regarded as" claim. In any event, even if plaintiff's charge is read as alleging only an actual disability, plaintiff's "record of" and "regarded as" theories are reasonably related to plaintiff's claim of actual disability asserted in the EEOC charge. Significantly,

plaintiff's "record of" and "regarded as" theories of discrimination are based on the same allegations found in plaintiff's EEOC charge. *See Mayers v. Washington Adventist Hosp.*, 131 F.Supp.2d 743, 748 (D.Md.2001) (discrimination claim based on actual disability fell within scope of EEOC charge that alleged only discrimination based on perceived disability where the same allegations and facts included within the charge could reasonably support a claim asserting discrimination on the basis of an actual disability); *Ogborn v. United Food & Comm. Workers Local No. 881*, No. 98–C–4623, 2000 WL 1409855, at *8 (N.D.Ill. Sept.25, 2000) (discrimination claim based on perceived disability fell within scope of charge alleging only actual disability in part because claim was based on the same conduct and implicated the same individuals). Moreover, on the charge form, plaintiff checked "disability" as the basis for his claim and clearly alleges that he had a disability. Under the ADA, "disability" is defined as including being regarded as having a disability and having a record of a disability. For this reason, too, plaintiff has not waived his discrimination claims. *See Ogborn*, 2000 WL 1409855, at *8 (discrimination claim based on perceived disability fell within scope of charge alleging only actual disability in part because ADA defines "disability" as including being regarded as having a disability); *Pellack v. Thorek Hosp. & Med. Center*, 9 F.Supp.2d 984, 989 (N.D.Ill.1998) (plaintiff's perceived disability theory was like or reasonably related to discrimination described in charge because definition of disability under ADA includes an actual disability, a perceived disability, and a record of a disability).

---

**3.** As will be explained below, plaintiff's discrimination claims are based only on the theories that plaintiff had a "record" of disability and/or that plaintiff was "regarded as" disabled by defendant. Plaintiff does not allege that he has an actual disability at the present time or that defendant discriminated against him on the basis of an actual disability.

For the reasons set forth above, the court concludes that plaintiff properly exhausted his administrative remedies with respect to his discrimination claims. Defendant's motion for summary judgment on this basis is denied and the court turns to the merits of plaintiff's claims.[4]

● **Plaintiff's ADA Discrimination Claims**

█ According to plaintiff, defendant refused to permit him to return to work and terminated his employment because of his disability. The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a); *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, ——— (10th Cir.2001). To establish a prima facie case of discrimination under the ADA, plaintiff must show that he is disabled within the meaning of the ADA; that he is qualified (*i.e.*, able to perform the essential functions of the job with or without accommodation); and that he was discriminated against because of his disability. *See McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir.2001). In its motion for summary judgment, defendant contends that plaintiff cannot establish any of the elements of his prima facie case. As set forth below, the court concludes that plaintiff has failed to establish that he is disabled within the meaning of the ADA. Thus, the court declines to address whether plaintiff has satisfied the second and third prongs of his prima facie case.

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of [an individual's] major life activities;" "a record of such an impairment;" or "being regarded as having such an impairment." *Selenke*, 248 F.3d at 1256 (quoting 42 U.S.C. § 12102(2)). Plaintiff here apparently concedes that he does not have a present impairment that substantially limits a major life activity. Rather, plaintiff contends that he has a record of such an impairment and that defendant regarded him as having such an impairment. As explained in more detail below, plaintiff has failed to show that he is disabled under either the "record of" or "regarded as" definitions of disability.

● Record of Impairment

█ To have a "record of such an impairment" within the meaning of the ADA, see 42 U.S.C. § 12102(2)(B), plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity. See *McKenzie*, 242 F.3d at 972; accord *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir.1999). Tenth Circuit precedent and the EEOC regulations make clear that the "impairment indicated in the record must be one that substantially limited a major life activity." See *Sorensen*, 194 F.3d at 1087; accord *McKenzie*, 242 F.3d at 972 ("To satisfy this definition, McKenzie therefore must establish that at some point her impairment actually did substantially limit her ability to work.").

---

**4.** Plaintiff also asserts that defendant retaliated against him in various respects for filing his EEOC charge. Plaintiff's retaliation claim was not brought before the EEOC and, indeed, plaintiff was not required to do so. See *Jones v. Runyon*, 91 F.3d 1398, 1401–02 (10th Cir.1996) ("[A]n act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint.") (quotations omitted). Nonetheless, relying on the Tenth Circuit's opinion in Jones v. Runyon, defendant asserts that plaintiff's retaliation claim is not properly before the court because the underlying ADA discrimination claims were not properly exhausted before the EEOC and thus are not properly before the court. See *id.* at 1402. Of course, because the court has concluded that plaintiff's underlying discrimination claims are properly before the court, this argument is rejected.

Plaintiff first asserts that he has a "record" of a disability in that he had been placed on disability retirement from his job as a prison guard with the State of Kansas several years prior to starting his employment with defendant. Plaintiff further asserts that he notified defendant's managers of his disability retirement (and his heart attack that led to his disability retirement) during the initial interview process. For several reasons, this evidence is insufficient to demonstrate that plaintiff had a "record" of an impairment that substantially limited a major life activity. First, as the EEOC regulations state, "[t]he fact that an individual has a record of ... disability retirement ... does not guarantee that the individual will satisfy the definition of disability." See 29 C.F.R. § 1630.2(k) (Appendix). In other words, "in order for an individual who has been classified in a record as 'disabled' for some other purpose to be considered disabled for purposes of [the ADA], the impairment indicated in the record must be a physical or mental impairment that substantially limits one or more of the individual's major life activities." *Id.*; accord *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 645 (2d Cir.1998) ("The record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough."). Second, plaintiff has come forward with no evidence that his heart condition (which resulted in his disability retirement) substantially limited a major life activity. While his heart condition may

have precluded work as a prison guard, plaintiff has not shown (or even alleged) that his heart condition affected his ability to perform any other jobs or that he was completely unable to work for any period of time. Thus, plaintiff has not shown that his heart condition substantially limited his ability to work. See *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994) (To demonstrate that an impairment substantially limits the major life activity of working, an individual must show a significant restriction in the "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.") (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Plaintiff also testified in his deposition that his heart condition prevented him from lifting "anything really heavy." While plaintiff does not expressly make the argument, to the extent he suggests that his heart condition substantially limited his ability to lift, the court rejects this argument. See *Reese v. Owens–Corning Fiberglas Corp.*, 31 F.Supp.2d 908, 917–18 (D.Kan.1998) (and cases cited therein).[5]

■ Plaintiff next asserts that his two strokes constitute a "record" of a disability. According to plaintiff, the evidence shows that plaintiff was "unable to work **at all**" for six months during a sixteen-month period because of his strokes (emphasis in plaintiff's brief). Plaintiff contends that the significant duration of his impairment is sufficient to render his impairment a "disability" within the meaning

---

**5.** In any event, there is simply no evidence that defendant took any discriminatory act against plaintiff based on his "record" of having a heart condition. In fact, defendant hired plaintiff for the loss prevention job after learning about plaintiff's disability retirement and his heart condition. There is no evidence that plaintiff's disability retirement or heart condition were ever mentioned by defendant or considered by defendant at any time after plaintiff's initial interview. Thus, even assuming that plaintiff could establish that his heart condition constituted a disability for purposes of the ADA, he nonetheless could not establish the third prong of his prima facie case-that he was discriminated against because of that disability.

of the ADA. In determining whether an impairment is substantially limiting such that it may support a record of disability under the ADA, the court considers three factors: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact of the impairment. *McKenzie*, 242 F.3d at 972–73; *Sorensen*, 194 F.3d at 1087. In addition, because plaintiff claims a significant limitation in his ability to work, he must show that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Sorensen*, 194 F.3d at 1088 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2149–52, 144 L.Ed.2d 450 (1999) and quoting 29 C.F.R. § 1630.2(j)(3)).

The long-term impact of plaintiff's strokes weighs heavily against finding that plaintiff's strokes substantially limited a major life activity. According to plaintiff's physician, plaintiff recovered "completely" from both strokes. Plaintiff has directed the court to no other evidence concerning his recovery-let alone any evidence suggesting that his strokes had any lasting effect on plaintiff. Moreover, plaintiff has come forward with insufficient evidence regarding the nature, severity and duration of the effects of his strokes. While plaintiff's physician testified that plaintiff's strokes presented as weakness in the left arm and left leg, there is simply no evidence suggesting the degree of weakness or the nature of plaintiff's rehabilitation. There is also no evidence concerning the length of plaintiff's hospitalizations in connection with his strokes. Finally, while plaintiff was obviously unable to return to his loss prevention position for several months, there is no evidence (rather, plaintiff simply makes the bald assertion in his brief) that he was unable to work "at all"

during those months. Thus, the court must conclude that these factors (i.e., the nature and severity of the impairment and the duration of the impairment) cut against plaintiff, too.

Finally, plaintiff has presented no evidence whatsoever that his strokes significantly restricted his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Again, while plaintiff was unable to perform his loss prevention job with defendant for several months due to the weakness in his left arm and left leg, plaintiff's inability to perform that job does not render him "disabled" within the meaning of the ADA. See *Sutton*, 119 S.Ct. at 2151 ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). While it may well be that the effects of plaintiff's strokes were severe enough such that he was unable to work at all, there is simply no evidence before the court on that issue. In the absence of evidence suggesting that his impairment significantly restricts his ability to perform a class of jobs or a broad range of jobs in various classes, the court concludes that plaintiff has not sufficiently shown that his condition substantially limits his ability to work. See *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, —— (10th Cir.2001) (plaintiff failed to show that she was substantially limited in her ability to work where she failed to present evidence from which a reasonable jury could conclude that she was unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person."). For all of the foregoing reasons, then, the court concludes that plaintiff has not shown that the effects of his strokes constituted an impairment that substantially limited any of plaintiff's major life activities. See *Soren-*

*sen*, 194 F.3d at 1087 (plaintiff did not have a "record of such an impairment" under ADA where her hospitalization and MS symptoms affected her for only a brief period of time and had little long-term impact and even though plaintiff could not perform any major life activities during her brief hospitalization).

● Regarded as Disabled

Plaintiff also claims that defendant regarded him as having a disability. See 42 U.S.C. § 12102(2)(C). The Supreme Court has recognized that a person is regarded as disabled within the meaning of the ADA if an employer "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities" or an employer "mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Sorensen*, 194 F.3d at 1088 (*quoting Sutton*, 119 S.Ct. at 2149–50).

■ According to plaintiff, defendant regarded plaintiff as substantially limited in his ability to perform not only his loss prevention job but any other job at the distribution center. In support of this argument, plaintiff highlights that defendant ignored Dr. Edalati's release and refused to permit him to return to work without a complete release from Dr. Sherwani. Plaintiff, however, directs the court to no authority suggesting that defendant was not justified in relying on Dr. Sherwani's restrictions and questioning plaintiff's ability to perform the essential functions of the loss prevention job. This is particularly true given that Dr. Sherwani, unlike Dr. Edalati, is a cardiologist and had been

treating plaintiff for his heart condition. Thus, while Dr. Edalati's release apparently reflected plaintiff's ability to work in light of plaintiff's stroke (i.e., plaintiff's left-sided weakness), Dr. Sherwani's release specifically stated that it was from a "cardiovascular standpoint." In such circumstances, the court concludes that defendant was justified in relying on Dr. Sherwani's release. Finally, the evidence in the record simply does not support plaintiff's contention that defendant refused to permit him to return to work without a complete release. Rather, the uncontroverted evidence demonstrates that plaintiff, as an alternative to providing a complete release, could have provided defendant with information that his lifting restrictions were permanent, in which case defendant would have commenced the accommodation process. Although plaintiff asserts in his papers that he was never told that he could provide information that his restriction was permanent, no evidence supports this assertion.[6] In short, at the very most, plaintiff's evidence demonstrates that defendant regarded him as unable to perform his loss prevention job in light of his lifting restriction. There is no evidence that defendant regarded plaintiff as unable to perform a class of jobs or a broad range of jobs in various classes. For these reasons, plaintiff has not shown that defendant regarded him as substantially limited in his ability to work. See *id.* at 1088–89 (plaintiff did not establish that she was "regarded" as disabled where she demonstrated only that defendant regarded her MS as precluding her from holding the position of flight nurse).

---

**6.** In an attempt to support his assertion that he was not told that he could provide information that his restrictions were permanent, plaintiff directs the court only to the deposition of Vayla Thomas, defendant's Loss Prevention Manager. The excerpt of Ms. Thomas's deposition on which plaintiff relies,

however, indicates only that Ms. Thomas did not notify plaintiff that he could present information that his restrictions were permanent. Plaintiff has come forward with no evidence that Mr. Harris did not advise plaintiff about this option or that plaintiff in fact had no knowledge of this option.

■ In further support of his "regarded as" claim, plaintiff contends that Vayla Thomas "believed he was unable to lift heavy objects and engage in active movement such as running, climbing stairs, [and] ... walking." Plaintiff further contends that Ms. Thomas "believed plaintiff's abilities were so limited that she was surprised plaintiff was able to drive his truck because it lacked power steering." These contentions lack merit and, worse yet, plaintiff has blatantly misrepresented to the court the nature of Ms. Thomas's testimony. Ms. Thomas, for example, simply did not testify that she believed plaintiff could not lift heavy objects, run, walk or climb stairs. Rather, she testified that those activities are activities that loss prevention associates frequently are required to perform "that could possibly aggravate a condition that a doctor has said, I prefer you not do that or you should not be doing this." In other words, Ms. Thomas was speaking purely in a hypothetical sense and her comments were not directed at plaintiff in particular. Similarly, Ms. Thomas testified that she was surprised to see plaintiff driving his truck only because she had heard just days before from plaintiff's roommate that plaintiff "was in really bad shape and just not feeling well and couldn't do much." As Ms. Thomas testified,

> And I don't believe it's power steering and [he's] turning the truck wheel like he had no problems whatsoever, and I know it's not fair for me to judge someone's health by their appearance, but he looked like he could get up and around pretty good to me when I was being told that he was having trouble driving.

> In sum, there is simply no evidence that Ms. Thomas regarded plaintiff as substantially limited in his ability to lift, walk, run, or climb stairs.

For all of the foregoing reasons, plaintiff has failed to establish that defendant regarded him as having a physical impairment that substantially limited any of his major life activities.

● Plaintiff's ADA Retaliation Claims

■ The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To establish a prima facie case of retaliation under this provision, plaintiff must prove that he engaged in an activity protected by the statute; that he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and that there was a causal connection between the protected activity and the adverse action. See *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, —— (10th Cir.2001) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999)).[7] If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a nondiscriminatory reason for the adverse employment action. See *id.* If defendant satisfies this burden of production, then, in order to prevail on his retaliation claim, plaintiff must prove that defendant's articulated reason for the adverse action is pretextual, or unworthy of belief. See *id.* (citations and quotations omitted).

Plaintiff claims that defendant retaliated against him for filing an EEOC charge. Specifically, plaintiff alleges that defendant, because plaintiff filed a charge, continued to refuse to permit him to return to work; failed to follow its own policy regarding contacting an employee on medical leave; terminated his employment;

---

7. For purposes of his ADA retaliation claim, plaintiff need not establish that he has a disability within the meaning of the statute. See *Selenke*, 248 F.3d at ——.

and noted on his exit interview form that he was ineligible for rehire. In support of its motion for summary judgment, defendant contends that, with the exception of plaintiff's discharge, none of the actions identified by plaintiff constitute "adverse employment actions" and, in any event, plaintiff cannot establish the requisite nexus between his filing an EEOC charge and defendant's actions. Plaintiff, in turn, moves for partial summary judgment on his claim that defendant retaliated against him by listing him as ineligible for rehire. According to plaintiff, Mr. Harris "admitted that he designated plaintiff as ineligible for rehire on the exit interview form solely because plaintiff filed the charge of discrimination." As set forth in more detail below, summary judgment is granted in favor of defendant on plaintiff's retaliation claims based on defendant's continued refusal to permit plaintiff to return to work; the termination of plaintiff's employment; and defendant's failure to follow its own policy regarding contacting employees on leave. However, genuine issues of material fact exist with respect to whether defendant listed plaintiff as ineligible for rehire based on plaintiff's EEOC filing.

■ The court begins with plaintiff's claims that defendant, based on the filing of plaintiff's charge, continued to refuse to permit him to return to work. While defendant's refusal to permit plaintiff to return to work may constitute an adverse action, see *Craft v. Yellow Freight Systems, Inc.*, No. 97–1029, 1998 WL 72783, at *3 (10th Cir. Feb.23, 1998),[8] this refusal began in May 1999–long before plaintiff

filed his charge. For this reason, plaintiff cannot establish the second prong of his prima facie case. See *id.* (when plaintiff asked to return to work in June 1991 and defendant refused, adverse action began in June 1991 and, thus, occurred prior to plaintiff's protected activity in August 1992). Moreover, the mere fact that defendant continued to refuse to permit him to return to work, in the absence of any other evidence,[9] is insufficient to establish a causal connection between plaintiff's charge and defendant's action. See *id.* (where defendant continued to refuse to permit plaintiff to return to work after plaintiff filed a charge, plaintiff still failed to establish causal connection because he did not show defendant's adverse action, "which began before he filed his EEOC charge, can be causally connected to the charge"). In sum, plaintiff cannot establish a prima facie case of retaliation based on defendant's continued refusal to permit plaintiff to return to work.

■ Plaintiff next claims that defendant failed to follow its own policy regarding contacting an employee on medical leave. Specifically, plaintiff contends that defendant's medical leave of absence policy expressly states that, prior to termination, defendant must contact the employee by certified mail, advise the employee that his or her leave time has expired, and inquire into the employee's medical status. Plaintiff further asserts (and defendant concedes) that he never received the notice and/or warning described in the policy. Assuming, without deciding, that such action constitutes an adverse employment

---

8. While the court recognizes that citation to unpublished opinions remains unfavored, it concludes that the Circuit's decision in Craft is helpful in that it specifically addresses the very issue presented here.

9. Plaintiff suggests in his papers that defendant, after plaintiff filed his charge, knew that

plaintiff's condition had improved and that plaintiff could perform the essential functions of his job but nonetheless continued to refuse to permit him to return to work because of the filing of plaintiff's charge. The problem with plaintiff's contention is that there is simply no evidence in the record to support it.

action, plaintiff nonetheless cannot establish the third prong of his prima facie case—i.e., that a causal connection exists between the filing of plaintiff's charge and defendant's failure to follow the policy.

Plaintiff filed his charge of discrimination in September 1999–at least four months prior to the time when defendant should have sent plaintiff a letter notifying plaintiff of the expiration of his leave time and inquiring about his medical status. Although the Tenth Circuit has held that protected conduct closely followed by adverse action may support an inference for retaliatory motive, see *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir. 1996), the Circuit has underscored that unless the employer's adverse action "is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." See *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (citing *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997)). The Circuit, for example, has held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. See *id.* (citing *Ramirez v. Oklahoma Dept. of Mental Health,* 41 F.3d 584, 596 (10th Cir.1994)). By contrast, the Circuit has held that a three-month period, standing alone, is insufficient to establish causation. See *id.* (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997)). Plaintiff here sets forth no additional evidence supporting a causal connection between his charge and defendant's failure to follow its policy concerning contacting employees on medical leave. Moreover, there is no evidence that defendant ever followed this specific requirement with respect to employees on medical leave. Thus, there is no suggestion that defendant's failure to follow the policy in plaintiff's case was unusual or surprising in any respect. Finally, the

uncontroverted evidence demonstrates that Ms. Thomas, while not sending the specific letter contemplated in defendant's policy, checked in with plaintiff several times during the course of his medical leave and after plaintiff filed his charge. On several of these occasions, Ms. Thomas inquired about plaintiff's well-being. For all of the foregoing reasons, plaintiff has not established a prima facie case of retaliation based on defendant's failure to follow its policy concerning contacting employees on medical leave.

■ The court turns, then, to plaintiff's claim that his employment was terminated in retaliation for his filing a charge. Plaintiff's employment was terminated more than four months after he filed his charge of discrimination. Thus, as explained above, he must come forward with additional evidence of causation. See *Anderson,* 181 F.3d at 1179 (and cases cited therein). He has not done so. In fact, plaintiff barely mentions this particular claim in his papers. In any event, the record contains no evidence that plaintiff's discharge was a result of anything other than the neutral application of defendant's medical leave of absence policy. There is no evidence or suggestion that defendant would have permitted plaintiff to remain on leave or maintained his employment with defendant but for the filing of plaintiff's charge. Moreover, defendant has come forward with evidence that defendant's leave of absence policy (or, more specifically, the provision that employees are discharged after one-year absences) has affected more than one hundred employees since 1998. For these reasons, defendant is entitled to summary judgment on plaintiff's retaliation claim to the extent that claim is based on the termination of plaintiff's employment.

Finally, plaintiff claims that defendant retaliated against him by listing him · as

ineligible for rehire on his exit interview form. Defendant vigorously argues that this action cannot constitute an "adverse employment action" even under the Tenth Circuit's liberal interpretation of that phrase. See *Jeffries v. Kansas*, 147 F.3d 1220, 1231–32 (10th Cir.1998). According to defendant, the mere notation in plaintiff's file that plaintiff was ineligible for rehire is a ministerial act of no consequence in that plaintiff never reapplied for a position with defendant. In other words, defendant contends that plaintiff suffered no adverse action because defendant never actually refused to hire plaintiff.

The court concludes that defendant's listing plaintiff as ineligible for rehire is sufficient to constitute an adverse employment action. In so holding, the court finds two Tenth Circuit decisions particularly instructive. In the first case, Jeffries, the plaintiff, a student in a pastoral education program, alleged that her supervisor threatened to stop supervising her and suggested that her contract would not be renewed the following year. *Id.* at 1227. Analyzing these allegations in connection with the plaintiff's retaliation claim, the district court held that the actions did not constitute adverse employment actions because the plaintiff's supervisor continued to supervise the plaintiff and the plaintiff elected not to attempt to renew her contract. *Id.* at 1231. On appeal, the Tenth Circuit reversed the district court's decision. *Id.* at 1231–33. Significantly, the Circuit rejected the idea that the plaintiff had to actually apply for a second year (i.e., attempt to have her contract renewed) in order to show an adverse employment action. *Id.* at 1231. In so finding, the Circuit emphasized that "the threat of non-renewal came from a person who indisputedly had considerable influence over employment and work assignment decisions in the CPE Program." *Id.* at 1232. The second case the court finds persuasive is *Berry v. Stevinson Chevrolet*,

74 F.3d 980 (10th Cir.1996). In *Berry*, the plaintiff's former employer reported the plaintiff of a suspected crime and the plaintiff was subsequently prosecuted for and acquitted of that crime. *Id.* at 984. Analyzing the plaintiff's retaliation claim, the district court held that reporting the plaintiff of a suspected crime constituted an adverse employment action. *Id.* at 986. On appeal, the Circuit affirmed the district court's decision and emphasized that a criminal trial "carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* at 986–87.

 For purposes of this case, the court derives two key principles from *Jeffries* and *Berry* in determining whether a particular action constitutes an adverse employment action in the retaliation context and, in light of these principles, concludes that genuine issues of material fact exist with respect to plaintiff's retaliation claim based on his exit interview form. The first principle, derived from *Jeffries*, is that the mere threat of refusing to rehire an individual (where the individual has not actually put the employer to the test by applying for a position) can constitute an adverse employment action, particularly where there is no reason to believe the threat would not be carried out. The *Jeffries* case, of course, is different from the case here in at least one respect. In *Jeffries*, the plaintiff had knowledge that any attempt to renew her contract might be futile in light of her supervisor's comments to her. Thus, her failure to attempt to have her contract renewed was explained (and excused) by her knowledge that such an attempt in all likelihood would be futile. By contrast, plaintiff here had no knowledge that he had been deemed ineligible for rehire until the discovery process and, thus, did not know that any attempt would have been futile. Nonetheless, under *Jef-*

*fries,* defendant's suggestion that it would not rehire plaintiff (as noted on the exit interview form) can still constitute an adverse employment action if the evidence presented at trial demonstrates, for example, that the notation on plaintiff's exit interview form was the "kiss of death" for any future employment opportunities plaintiff may have sought with defendant. In other words, if plaintiff can show that defendant consistently refused to rehire those employees who had been listed as ineligible for rehire, then a reasonable factfinder could conclude that plaintiff would not have been rehired even if he had actually reapplied for employment with defendant.[10] The second principle, derived from *Berry,* is that an action can be "adverse" even in the absence of proof that the action actually had an adverse impact on future employment opportunities so long as there is simply a risk of such harm. By listing plaintiff as ineligible for rehire, defendant clearly put plaintiff's future employment opportunities with defendant at risk. For these reasons, the court denies defendant's motion for summary judgment on the "adverse action" issue. See *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998) (listing employee as ineligible for rehire constitutes adverse employment action in retaliation context).

Defendant next asserts that summary judgment in its favor is warranted because plaintiff's only evidence of the requisite nexus between his protected activity and defendant's listing him as ineligible for rehire is Mr. Harris's testimony-testimony that defendant characterizes as inadmissible speculation. By contrast, plaintiff argues that he is entitled to summary judgment on this claim because Mr. Harris's

testimony is the equivalent of an admission of retaliatory intent. A careful reading of Mr. Harris's testimony, however, reveals that neither party is entitled to summary judgment on this issue. For the court cannot conclude that Mr. Harris was speculating about the reason for marking plaintiff as ineligible for rehire when Mr. Harris clearly testified that he was responsible for the notation, either because he made it himself or because he directed someone else to make it. Thus, while Mr. Harris may have been unable to remember at the time of his deposition the reason that plaintiff was listed as ineligible for rehire, his "assumption" that it may have been based on plaintiff's filing an EEOC charge is sufficient for a reasonable factfinder to conclude that plaintiff's charge was the reason that he was marked as ineligible for rehire. On the other hand, Mr. Harris, contrary to plaintiff's contention, did not admit that plaintiff's charge was the reason that plaintiff was marked as ineligible for rehire. As stated above, although Mr. Harris was able to make a fairly educated guess about the reason for the notation, he could not remember with any certainty. For this reason, plaintiff's motion for partial summary judgment is denied. In short, genuine issues of material fact exist with respect to whether defendant listed plaintiff as ineligible for rehire based on plaintiff's EEOC filing.

 One final issue is presented by defendant in its papers-plaintiff's entitlement to compensatory and punitive damages in connection with his retaliation claim. Indeed, defendant moves for summary judgment on plaintiff's claim for such damages. The motion is granted as the

---

**10.** Nonetheless, because plaintiff did not apply for rehire and because he cannot rely on the futility doctrine, see supra p. ——, he is not entitled to recover actual damages in connection with this claim. See *Davoll v. Webb,*

194 F.3d 1116, 1132 (10th Cir.1999) (in order for a nonapplicant plaintiff to merit relief, he must prove that he would have applied for the job had it not been for the employer's discriminatory practices).

statutory language and legislative history of the ADA simply do not support a valid basis for a claim of compensatory and punitive damages for an ADA retaliation claim. See *Boe v. AlliedSignal Inc.,* 131 F.Supp.2d 1197, 1202–03 (D.Kan.2001); *Brown v. City of Lee's Summit,* No. 98–0438–CV–W–2, 1999 WL 827768, at \*3–4 (W.D.Mo. June 1, 1999). While the court can discern no logic in a rule that precludes an award of compensatory and punitive damages in an ADA retaliation case when such damages are available in Title VII retaliation cases, the court is nonetheless confined to the construction of the statute. And while the court cannot say whether Congress intended such a rule or whether the rule is simply the result of an oversight by Congress, it is an issue that Congress should address.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for partial summary judgment (Doc. 47) is denied and defendant's motion for summary judgment (Doc. 50) is granted in part and denied in part. As set forth above, a trial to the court will be held on plaintiff's claim that defendant listed him as ineligible for rehire as a result of plaintiff's EEOC filing. Should plaintiff establish at trial that defendant is liable for retaliation, plaintiff's remedy will be limited to declaratory and/or injunctive relief.

IT IS SO ORDERED.