Michael G. McMULLIN, Plaintiff,

v.

John ASHCROFT, United States Attorney General; United States Marshals Service; John Doe (Dr. Richard Miller); and AKAL Security, Inc., Defendants.

No. 03 CV 142 JP/LFG.

United States District Court,
D. Wyoming.

Sept. 1, 2004.

**30.** *Id.*

**31.** *Id.*

**32.** *Lawrence Typographical Union No. 570 v. Sperry For and On Behalf of N.L.R.B.,* 356 F.2d 58, 59 (10th Cir.1966).

Gay Vanderpoel Woodhouse, Lori Lynn Brand, Gay Woodhouse Law Office, Cheyenne, WY, for Plaintiff.

Roxane J. Perruso, United States Attorney's Office, Denver, CO, Corinne E. Rutledge, James Kaste, Lathrop & Rutledge, Kevin Cord Cook, Hirst & Applegate, Cheyenne, WY, for Defendants.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

This is one of the rare, but not unheard of,[1] cases in which many of the plaintiff's claims are favored by equity, but foreclosed by the law.

In his First Amended Complaint[2] (Doc. No. 72) Plaintiff asserts against Defendants John Ashcroft, United States Attorney General; United States Marshals Service; and AKAL Security, Inc., claims under the Americans with Disabilities Act ("ADA") (First Claim); Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act") (Second Claim); Section 503 of the Rehabilitation Act (Third Claim); the civil conspiracy statute, 42 U.S.C. § 1985(3) (Fourth Claim); and the implied covenant of good faith and fair dealing (Sixth Claim).[3]

---

1. *See, e.g., Neal v. Roche,* 349 F.3d 1246, 1252 (10th Cir.2003) (employers are free to employ nondiscriminatory criteria that are unfair or even reprehensible, so long as they are not discriminatory); *Tesh v. United States Postal Svc.,* 349 F.3d 1270, 1274 (10th Cir.2003) (an employer may rely on a non-discriminatory reason, even if the employer is erroneous in his belief).

2. By Memorandum Opinion and Order ("MOO") dated April 2, 2004, this Court granted in part a motion to dismiss filed by Defendants John Ashcroft and United States Marshals Service, dismissing Plaintiff's claims against them for civil conspiracy under 42 U.S.C. § 1985(3) and for breach of the implied covenant of good faith and fair dealing under Wyoming Law, and granting summary judgment in favor of Defendant Dr. Richard Miller (a.k.a. "John Doe") for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. On May 18, 2004, Plaintiff filed his First Amended Complaint in this action.

3. Plaintiff has also asserted against Defendant Dr. Richard Miller (a.k.a. "John Doe") a claim for civil conspiracy under 42 U.S.C. § 1985(3) (Fourth Claim); a claim under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fifth Claim); and a claim for breach of the implied covenant of good faith and fair dealing (Sixth Claim). On August 6, 2004, Dr. Miller filed a Motion to Dismiss Plaintiff's claims against him for lack of subject matter jurisdiction (Doc. No. 107). At the time of filing this Memorandum Opinion and Order, Dr. Miller's motion to dismiss was not fully briefed. Consequently, the Court has not considered the arguments raised by Dr. Miller in his motion to dismiss, or the claims that Plaintiff has asserted against Dr. Miller, in this Memorandum Opinion and Order.

On April 5, 2004, Defendant AKAL Security, Inc. ("AKAL") filed a Motion for Partial Judgment on the Pleadings (Doc. No. 43). On April 26, 2004, AKAL filed a Motion for Summary Judgment (Doc. No. 54). On June 14, 2004, Defendants John Ashcroft and United States Marshals Service (collectively "Federal Defendants") filed a Motion for Summary Judgment (Doc. No. 86). On August 6, 2004, the parties presented oral arguments on these motions. Having carefully considered the briefs, the case law, the admissible evidence in the record, and the arguments of counsel, the Court finds that these motions should be granted.

## I. FACTUAL BACKGROUND

The Court will view the facts in the light most favorable to the plaintiff. *See EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1189 (10th Cir.2000). The following are the facts, established by admissible evidence, that most favor Plaintiff. Unless otherwise noted, these facts are undisputed.

Plaintiff Michael G. McMullin began his career in law enforcement in 1973 with the Casper, Wyoming Police Department. During the fall of 1986, after a period in which Plaintiff continuously had been working the "graveyard shift," Plaintiff began experiencing symptoms of depression, including insomnia and sleep deprivation that resulted in Plaintiff's periodically sleeping for only two to three hours a night. In March of 1988, while responding to an armed robbery, Plaintiff briefly entertained a suicidal thought. He then notified his commanding officer that he needed to take medical leave. Plaintiff's family physician referred Plaintiff to a psychiatrist, who diagnosed Plaintiff with clinical depression. Plaintiff's psychiatrist prescribed medication to treat Plaintiff's clinical depression and medication to treat Plaintiff's insomnia and sleep deprivation.

Plaintiff's treatment with medication was successful in controlling the symptoms of depression, including insomnia and sleep deprivation. Accordingly, in August of 1988, Plaintiff's physician released Plaintiff to return to his law enforcement duties, on the condition that Plaintiff not be assigned to work the graveyard shift during the first six months that Plaintiff was back on duty. However, Plaintiff's physician opined in a letter that being on call and occasionally awoken in the middle of the night would not cause a recurrence of Plaintiff's symptoms. Plaintiff remained employed with the Casper Police Department until 1996. During his tenure with the Casper Police Department, Plaintiff received numerous awards, commendations, and regular pay raises. His performance appraisals consistently were above-average or excellent. In 1996, Plaintiff retired from the Casper Police Department. Subsequently, he moved to Cheyenne, Wyoming.

After moving to Cheyenne, Plaintiff was employed briefly by a security company, but he quit that employment upon learning that it would require him to work predominately graveyard shifts. In December of 1996, Plaintiff was hired by the Capitol Police Department to provide security and protection to the Wyoming Governor and First Family. At the time of his hiring, Plaintiff informed the Capitol Police Department about his clinical depression, as well as his inability to work predominately graveyard shifts. Between 1996 and 1998, Plaintiff worked the graveyard shift for the Capitol Police Department on approximately 24 occasions, which Plaintiff says did not bother him. In 2000, Plaintiff experienced a return of the symptoms of clinical depression, despite the fact that Plaintiff had been on anti-depressant medication since 1988. Consequently, Plaintiff's psychiatrist modulated Plaintiff's

medication until his symptoms of depression were again successfully treated.

Defendant remained with the Capitol Police Department until April of 2001, at which time Plaintiff sought employment with Defendant AKAL for the position of Court Security Officer ("CSO") at the federal building in Cheyenne. AKAL is a private corporation that contracts with Defendant United States Marshals Service ("USMS") for the provision of court security. The contract between AKAL and USMS states that "the United States Marshals Service reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO." AKAL Mem. (Doc. No. 55) Ex. A. The contract also requires that all CSO applicants "meet the required medical standards," and cautions that "failure to meet any one of the medical and/or physical qualifications will disqualify any employee for appointment or continuation under the contract." *Id.* At the time that Plaintiff applied for employment with AKAL, Plaintiff disclosed to Lead CSO Ron Pick[4] that Plaintiff suffered from clinical depression. Mr. Pick responded that as long as Plaintiff's depression was under control and treated with medication, it would not pose a problem for Plaintiff's employment with AKAL.

As part of the screening process for employment as a CSO, Plaintiff was examined by Dr. Craig Brown, a physician designated by USMS to conduct medical examinations of applicants for CSO positions. Plaintiff was also required to fill out a Certificate of Medical Examination ("CME") and answer questions about his medial history and medication use. Plaintiff disclosed on the CME that he had been treated for clinical depression since 1988,

that he was taking medication for his depression[5], and that he was under the care and supervision of a psychiatrist. After reviewing Plaintiff's CME and inquiring about some of Plaintiff's responses, Dr. Brown found no limitations in Plaintiff's ability to perform the job functions required of a CSO. In particular, Dr. Brown concluded that Plaintiff was not limited in his "ability to use and desirability of using firearms," his "working closely with others," his capacity for "prolonged or irregular hours of work," and his ability to perform "aggressive law enforcement duties." Plf. Mem. (Doc. No. 75) Ex. 5.

On April 30, 2001, Plaintiff began working for AKAL as a CSO for a probationary period of six months. At that time, Plaintiff signed a Special Deputation Form which states: "this authorization does not constitute appointment or employment by the United States Marshals Service, the United States Department of Justice, or the United States Government. The Contract Court Security Officer ... is neither entering into an employment agreement with the Federal Government or any element thereof ...." Fed. Def. Mem. (Doc. No. 90) Ex. 3 at 2. Plaintiff remained employed as a CSO with AKAL until August 28, 2001. While working for AKAL as a CSO, Plaintiff performed his duties satisfactorily and did not receive any reprimands.

Plaintiff's CME was forwarded to Defendant Dr. Richard Miller, Director for Law Enforcement Programs with the U.S. Public Health Service, in accordance with the terms of a release signed by Plaintiff. After reviewing Plaintiff's CME, Dr. Miller concluded that "[Plaintiff's] recent initiation of medication does not support a

---

**4.** Ray DuFresne succeeded Mr. Pick in May of 2001 as Lead CSO for AKAL in the Cheyenne federal building.

**5.** At the time he was deposed in this case, Plaintiff was no longer taking medication for insomnia. Plaintiff admits that he has not had difficulty sleeping in the past 12 years.

stable mental health condition." *Id.* Ex. 11. On May 6, 2001, Dr. Miller issued a recommendation to USMS that Plaintiff was "not medically qualified to perform the essential functions of the job" of CSO. *Id.* Dr. Miller made his recommendation based on the information contained in Plaintiff's CME.

In a letter dated August 22, 2001, USMS informed AKAL that Plaintiff failed to meet the requirements of the CSO contract because "his medical condition poses a significant risk to the health and safety of himself and/or others in the performance of essential job functions." Plf. Mem. (Doc. No. 75) Ex. 7. USMS asked AKAL to provide a replacement for Plaintiff within seven business days. On August 23, 2001, AKAL Lead CSO Ray DuFresne gave Plaintiff a copy of the August 22, 2001 USMS letter and informed Plaintiff that he would be suspended without pay until the matter could be cleared up.

On August 28, 2001, USMS notified AKAL in writing that Plaintiff had to be removed as a CSO because Plaintiff's "history of chronic depression could impair judgment and affect his ability to think clearly and respond quickly to emergency situations. As a result, his condition poses a significant risk to the health and safety [of] himself and others in the performance of essential job functions. He was found to be medically disqualified by the Medical Officer for the United States Marshals Service." Fed. Def. Mem. (Doc. No. 90) Ex. 13. That same day, Mr. DuFresne handed Plaintiff a letter from an AKAL executive informing Plaintiff that AKAL was contractually obligated to remove him from his CSO position. Plaintiff was also advised that he could file a written appeal contesting his removal within 15 days.

On September 5, 2001, Plaintiff submitted a written appeal to AKAL contesting his removal. In his appeal, Plaintiff asserted that his medical condition had been treated successfully since 1988, and that he was capable of performing the tasks of a CSO. Plaintiff also attached documentation, including previous employment evaluations and letters from his doctors stating that Plaintiff was fully capable of performing law enforcement duties. AKAL forwarded Plaintiff's appeal and the attached documentation to USMS employment personnel.

On September 12, 2001, AKAL Senior Vice President Daya Khalsa submitted a letter requesting that USMS reconsider its decision to remove Plaintiff. Mr. Khalsa's letter stated: "AKAL Security, Inc. wishes to ... request that the decision be reviewed and reversed, with the result that Mr. McMullin be reinstated to his position as Court Security Officer ... Mr. McMullin, his physicians and employers, including the State of Wyoming, believe that he is medically qualified and is fully capable of performing the necessary duties ... AKAL believes that Mr. McMullin is fully capable of performing the essential functions of the job. We do not believe that his medical condition poses a direct threat of injury to others." AKAL Mem. (Doc. No. 55) Ex. E.

After receiving no response from USMS regarding Plaintiff's written appeal or Mr. Khalsa's letter, on October 8, 2001 AKAL forwarded copies of Plaintiff's appeal, including the attached documentation, as well as Mr. Khalsa's letter, to Deborah Westbrook, General Counsel for USMS. Despite these efforts by Plaintiff and AKAL, Dr. Miller never received Plaintiff's written appeal or the attached documents attesting to Plaintiff's fitness for law enforcement work. At his deposition taken in this case on April 28, 2004, Dr. Miller testified that if he had received such materials, he would most likely have found that Plaintiff was qualified for the position of CSO.

On January 24, 2002, USMS advised AKAL that its request for Plaintiff's reinstatement was denied. On April 4, 2002, AKAL informed Plaintiff that USMS had denied its appeal. On June 28, 2002, in response to a request by the United States Department of Labor, AKAL offered Plaintiff alternative employment in one of its commercial offices, which would have paid less than the CSO position and would have required Plaintiff to relocate outside of Wyoming. AKAL conceded that "the positions we are able to offer are not comparable to Mr. McMullin's previous position. Unfortunately, Mr. McMullin would not qualify for a comparable position due to the fact that the medical requirements would be the same if not more stringent tha[n] the requirements for his previous position." *Id.* Ex. I.

Since termination of his employment by AKAL, Plaintiff has worked as a substitute teacher, and has held seasonal law enforcement employment as a Park Ranger with the Wyoming State Parks Service. Plaintiff has also worked part-time as a Court Security Officer for the Laramie County Courthouse Complex in Cheyenne. When relevant, Plaintiff has informed each of these employers and other prospective employers of his inability to work graveyard shifts. On July 10, 2003, after having received a Notice of Right to Sue from the U.S. Department of Labor and the U.S. Department of Justice, Plaintiff timely filed his complaint against Defendants.

## II. STANDARD OF REVIEW

### A. Rule 12(c) Motion for Judgment on the Pleadings

■ In the Tenth Circuit, the standard of review for evaluating a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as the standard that applies to motions filed under FED. R. CIV. P. 12(b)(6). *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 n. 2 (10th Cir.2002). In analyzing a motion to dismiss, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Dill v. City of Edmond,* 155 F.3d 1193, 1203 (10th Cir.1998). A court will not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Ramirez v. Dep't of Corr.,* 222 F.3d 1238, 1240–41 (10th Cir. 2000) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Furthermore, the Tenth Circuit has noted that the dismissal of a complaint is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Summum v. Callaghan,* 130 F.3d 906, 913 (10th Cir.1997).

### B. Rule 56(b) Motions for Summary Judgment

■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus.,*

*Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991).

██ An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir.1996). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the party's pleadings. *Bacchus,* 939 F.2d at 891. To withstand a motion for summary judgment, the non-movant must make specific reference to admissible evidence in the record. *See Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1546 (10th Cir.1995). Unsubstantiated allegations, no matter how true they might be, cannot be considered. *See id.*

## III. DISCUSSION

### A. Claim Under Section 503 of the Rehabilitation Act

██ Plaintiff asserts a claim against AKAL for violation of Section 503 of the Rehabilitation Act, 29 U.S.C. § 793. First Am. Compl. (Doc. No. 72) at 15. AKAL argues that this claim is barred by Tenth Circuit authority. AKAL Mot. (Doc. No. 43) at 1. AKAL notes that the Tenth Circuit has held that a plaintiff may not maintain a cause of action under Section 503 of the Rehabilitation Act, because it does not provide for a private right of action. *See Hodges v. Atchison, Topeka & Santa Fe R.R. Co.* 728 F.2d 414, 415–16 (10th Cir. 1984). Furthermore, in Plaintiff's Opposition to Defendant AKAL, Security Inc.'s Motion for Partial Judgment on the Pleadings (Doc. No. 58), Plaintiff failed to include a "short, concise statement of the argument and authorities in opposition" to AKAL's argument. A statement of that nature is required under the local civil rules for the District of Wyoming. *See* D.Wyo. L.R. Civ. 7.2(a). Plaintiff's failure to set forth a concise statement in opposition to AKAL's argument constitutes consent to grant AKAL's motion with respect

to this claim. *See id.* (failure to serve a response in opposition to a motion constitutes consent to grant that motion). The Court concludes that AKAL's motion for judgment on the pleadings should be granted with respect to Plaintiff's Third Claim for Relief for violation of Section 503 of the Rehabilitation Act.

### B. Claim for Civil Conspiracy under Section 1985(3)

██ AKAL argues that Plaintiff's claim for civil conspiracy under 42 U.S.C. § 1985(3) also is barred by Tenth Circuit precedent. AKAL Mot. (Doc. No. 43) at 2. In order to bring a claim for civil conspiracy under Section 1985(3), a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993). Plaintiff contends that he meets this requirement because he is "squarely within a class of persons historically subject to invidious discriminatory animus," and that AKAL conspired to unlawfully terminate Plaintiff's employment on the basis of perceived stereotypes regarding his diagnosed condition of clinical depression. First Am. Compl. (Doc. No. 72) at 17–18. However, the Supreme Court has narrowly construed the classes of persons who are entitled to protection under Section 1985(3). *See United Bhd. of Carpenters & Joiners of Am., Local 610 AFL–CIO v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In light of the Supreme Court's narrow construction of the statute, the Tenth Circuit has expressly held that disabled persons do not constitute a class of persons entitled to protection under Section 1985(3). *See Wilhelm v. Cont'l Title Co.,* 720 F.2d 1173, 1176–77 (10th Cir.1983); *Phibbs v. Am.*

*Prop. Mgmt.*, 60 Fed.Appx. 738, 740 (10th Cir.2003) (unpublished decision).

 Plaintiff submits that the Tenth Circuit's holding in *Wilhelm* was abrogated by the passage in 1992 of the Americans with Disabilities Act, which states that "Individuals with disabilities are a discrete and insular minority who have been ... subjected to a history of purposeful unequal treatment ...." 42 U.S.C. § 12101(a)(7). However, subsequent to the ADA's passage, the Tenth Circuit has upheld *Wilhelm*, indicating that the decision is still controlling authority in this circuit. *See Phibbs*, 60 Fed.Appx. at 740. Plaintiff also points out that decisions from courts outside the Tenth Circuit have held that disabled persons are entitled to protection under Section 1983(5). *See, e.g., People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 42 (2d Cir.1982); *Trautz v. Weisman*, 819 F.Supp. 282, 295 (S.D.N.Y.1993); *Tyus v. Ohio Dep't of Youth Svcs.*, 606 F.Supp. 239, 246–47 (S.D.Ohio 1985). As AKAL correctly notes, the Tenth Circuit has declined to adopt this more expansive reading of Section 1985(3), and consequently, this Court is bound to follow the Tenth Circuit's more narrow interpretation of the statute. *See United States v. Spedalieri*, 910 F.2d 707, 709 n. 2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits."). In keeping with the holding in *Wilhelm*, this Court finds that disabled persons do not constitute a class of persons that is entitled to protection under Section 1985(3). *See* 720 F.2d at 1176–77. The Court concludes that AKAL's motion for judgment on the pleadings should be granted with respect to Plaintiff's Fourth Claim for Relief asserted against AKAL for civil conspiracy under 42 U.S.C. § 1985(3).

## C. Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

 Plaintiff has also asserted a Sixth Claim for Relief against AKAL for breach of the implied covenant of good faith and fair dealing under Wyoming law. First. Am. Compl. (Doc. No. 72) at 21. Under Wyoming law, all contracts of employment contain an implied covenant of good faith and fair dealing. *Loghry v. Unicover Corp.*, 927 P.2d 706, 712 (Wyo. 1996) (*citing Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 221 (Wyo.1994)). Wyoming recognizes a limited tort claim for breach of this implied covenant in employment contracts in "rare and exceptional cases" where the plaintiff shows that a "special relationship of trust and reliance" exists between the plaintiff and the employer. *See Loghry*, 927 P.2d at 712; *Wilder*, 868 P.2d at 221.

 A plaintiff may show that there was a "special relationship of trust and reliance" by providing evidence of the existence of separate consideration, a common law right, a statutory right, or a right accruing through longevity of service. *See Loghry*, 927 P.2d at 712; *Wilder*, 868 P.2d at 221. Plaintiff alleges that a special relationship of trust and reliance existed between Plaintiff and AKAL by virtue of the affirmative duties imposed by Section 503 of the Rehabilitation Act that require employers such as AKAL to facilitate and ensure the hiring, placement, and advancement of otherwise qualified individuals with disabilities. Plf. Mem. (Doc. No. 75) at 30. However, as discussed below in the analysis of Plaintiff's claims under the ADA and Section 501 of the Rehabilitation Act, Plaintiff is not "disabled" for the purposes of these statutes. Hence, the affirmative duties imposed by Section 503 of the Rehabilitation Act would not create a special relationship of trust and reliance

between Plaintiff and AKAL. There is no evidence of separate consideration. Plaintiff has not identified a common law right that would establish a special relationship. Plaintiff's four months of employment with AKAL, during which time Plaintiff was employed solely in a probationary capacity, is insufficient to form a special relationship based on longevity of service. *See Wilder*, 868 P.2d at 222 (finding that three years of employment did not give rise to a special relationship on the basis of longevity of service). Thus, Plaintiff has failed to show that there was a "special relationship of trust and reliance" supporting Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The Court concludes that summary judgment should be granted in favor of AKAL with respect to Plaintiff's Sixth Claim for Relief.

**D. Claims of Violations of the ADA and Section 501 of the Rehabilitation Act**

Plaintiff has asserted a claim against AKAL for violation of the ADA, 42 U.S.C. §§ 12112(a), (b)(1), (b)(2), and (b)(6), and a claim against Federal Defendants for violation of Section 501 of the Rehabilitation Act, 29 U.S.C. § 791. First Am. Compl. (Doc. No. 75) at 9–14. Federal Defendants argue that the Court lacks subject matter jurisdiction to consider Plaintiff's Rehabilitation Act claim, because Plaintiff was not a "federal employee" for purposes of the Rehabilitation Act. In addition, Federal Defendants and AKAL contend that Plaintiff's claims under the Rehabilitation Act and the ADA must fail because Plaintiff cannot show that he is "disabled."

*1. Plaintiff is a Federal Employee for Purposes of the Rehabilitation Act*

Section 501 of the Rehabilitation Act prohibits disability discrimination by the federal government against federal employees. *See* 29 U.S.C. § 791. In order to assert a claim against Federal Defendants for violation of Section 501, Plaintiff must show that he was a "federal employee" for purposes of the Rehabilitation Act. While it is undisputed that Plaintiff was directly employed by AKAL rather than by USMS, Plaintiff argues that USMS qualifies as Plaintiff's employer for purposes of the Rehabilitation Act under the Tenth Circuit's "joint-employer" test. Plf. Mem. (Doc. No. 103) at 16.

 In a case involving a claim for disability discrimination under the ADA, the Tenth Circuit stated that a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. *See Bristol v. Bd. of County Comm'rs of the County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir.2002) (en banc). The joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment. *Id.* In other words, courts applying the joint-employer test look to whether both entities "exercise significant control over the same employees." *Id.*

 Plaintiff has presented evidence that both USMS and AKAL exercised significant control over the essential terms and conditions of Plaintiff's employment as a CSO. First, there is the following evidence that USMS co-determined whether Plaintiff was qualified for the CSO position: USMS employees comprised part of the panel that interviewed Plaintiff; USMS conducted a background check of Plaintiff; and members of USMS and AKAL typically "come to a consensus" about which applicants are the best qualified for the CSO position. Def. Mem. (Doc. No. 55) Ex. 19 at 5; Fed. Def. Mem. (Doc. No. 90) Ex. 5 at 7–9. In addition, the contract between AKAL and USMS provides that "the United States Marshals Service reserves the right at all times to

determine the suitability of any Contractor employee to serve as a CSO." AKAL Mem. (Doc. No. 55) Ex. A. Next, there is evidence that USMS co-determined Plaintiff's tasks and responsibilities by: directing Plaintiff's actions in the course of his daily duties; providing Plaintiff with the law enforcement equipment that Plaintiff carried while on duty as a CSO; and periodically testing Plaintiff's ability to perform the functions of a CSO. Fed. Def. Mem. (Doc. No. 90) Ex. 5 at 22–24. Finally, there is evidence that USMS co-determined whether to terminate Plaintiff's employment by deciding that Plaintiff was not medically qualified for the CSO position, and by directing AKAL to remove and replace Plaintiff as a CSO. Fed. Def. Mem. (Doc. No. 90) Ex. 13. This evidence is sufficient to show that USMS exercised significant control over the essential terms and conditions of Plaintiff's employment as a CSO, and therefore, that under the joint-employer test, USMS qualifies as Plaintiff's "employer" for purposes of the Rehabilitation Act.[6] Hence, the Court has subject matter jurisdiction to hear Plaintiff's claim for a violation of the Rehabilitation Act against Federal Defendants.

### 2. Plaintiff Is Not "Disabled" For Purposes of the ADA or the Rehabilitation Act

 Federal Defendants and AKAL assert that Plaintiff cannot establish the first element of a prima facie case of disability discrimination, because Plaintiff cannot show that he is "disabled" for purposes of the ADA or the Rehabilitation Act. In order to establish a prima facie

case of disability discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show that: 1) he is a disabled person within the meaning of the law; 2) he is otherwise qualified for the job; and 3) he was discriminated against because of his disability. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1304 (10th Cir.1999); *Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir.2000). The definition of disability is the same for claims brought under either the Rehabilitation Act or the ADA. *See Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 193–94, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942–43 (10th Cir.1994). The Rehabilitation Act and the ADA define disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (*citing* 42 U.S.C. § 12102(2)); *Bolton*, 36 F.3d at 942. To make out a prima facie case of disability discrimination, a plaintiff must show that he has an actual disability (subsection (A)), or has a record of a disability (subsection (B)), or is regarded as having a disability (subsection (C)). *Sutton*, 527 U.S. at 478, 119 S.Ct. 2139.

### A. Actual Disability

 The Supreme Court has stated that consideration of subsection (A) of the disability definition proceeds in three

---

**6.** Federal Defendants cite an unpublished decision from the District Court for the District of Kansas as support for their argument that USMS does not qualify as Plaintiff's employer under the joint-employer test. *See Vann v. White*, 2003 WL 21715328 (D.Kan.2003) (unpublished decision). That case is distinguishable because the employment contract at issue in *Vann* did not give the defendant the same degree of control over the essential terms and conditions of plaintiff's employment as USMS held over the terms and conditions of Plaintiff's employment in this case. *Id.* at *4 (defendant did not retain authority or control over hiring, firing, evaluating, or disciplining employees).

steps. *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, the court considers whether the plaintiff has "a physical or mental impairment." *Id.* Next, the court identifies the life activity upon which the plaintiff relies, and determines whether it constitutes a "major life activity." *Id.* Finally, tying the two statutory phrases together, the court decides whether the impairment substantially limits the major life activity. *Id.; see also Poindexter v. Atchison, Topeka, and Santa Fe R.R. Co.,* 168 F.3d 1228, 1230 (10th Cir.1999). In other words, merely having an impairment does not make one "disabled" under subsection (A); the claimant must also demonstrate that the impairment substantially limits a major life activity. *See Toyota,* 534 U.S. at 195, 122 S.Ct. 681. Moreover, a plaintiff must specifically plead which impairments and major life activities are at issue. *Poindexter,* 168 F.3d at 1230.

■■■■ Plaintiff says he suffers from the impairment of clinical depression. The Tenth Circuit has recognized clinical depression as a mental impairment for purposes of the disability definition. *See, e.g., Pack,* 166 F.3d at 1304; *Doyal v. Okla. Heart, Inc.,* 213 F.3d 492, 495 (10th Cir. 2000). Plaintiff contends that his impairment affects the major life activities of "sleeping" and "working." Plf. Mem. (Doc. No. 103) at 22. It is well-settled that sleeping and working are "major life activities" for purposes of the ADA and the Rehabilitation Act. *See, e.g., Pack,* 166 F.3d at 1305 (sleeping); *Bolton,* 36 F.3d at 942 (working). Thus, in regard to the subsection (A) definition of disability, the critical question is whether Plaintiff's clinical depression "substantially limits" the major life activities of sleeping and working.

■■■■ In order for an impairment to be "substantially limiting," the plaintiff must: 1) be unable to perform a major life activity that the average person in the general population can perform; or 2) be significantly restricted as to the conditions, manner, or duration under which the plaintiff can perform a particular major life activity as compared to an average person. *See Pack,* 166 F.3d at 1305; *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 n. 3 (10th Cir.2001). A court should consider three factors in determining whether an individual is "substantially limited" in a major life activity: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent long term impact, or the expected long term impact of or resulting from the impairment. *See Pack,* 166 F.3d at 1305; *Lusk,* 238 F.3d at 1240. In addition, the Supreme Court has held that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity ...." *Sutton,* 527 U.S. at 481, 119 S.Ct. 2139; *Pack,* 166 F.3d at 1306.

■■■ Plaintiff maintains that his impairment substantially limits him in the major life activity of sleeping, because untreated, his clinical depression significantly restricts his ability to sleep as compared to an average person in the general population. Plf. Mem. (Doc. No. 103) at 24. However, the Court cannot assess Plaintiff's "untreated" impairment of clinical depression, because the Court must consider the effects of corrective measures when determining whether Plaintiff's impairment "substantially limits" a major life activity. *See Sutton,* 527 U.S. at 481, 119 S.Ct. 2139. As Plaintiff himself concedes, his symptoms of sleep deprivation are "generally under control" on account of his taking anti-depressant medication. Moreover, there is no evidence

that Plaintiff has continued to suffer from insomnia or sleep deprivation since he began treatment for his clinical depression in 1988. Viewing Plaintiff's impairment in light of the corrective measures of his medication, the Court finds that Plaintiff has failed to show that his depression substantially limits him in the major life activity of sleeping. Although Plaintiff suffered from insomnia between 1986 and 1988, which resulted in Plaintiff's periodically getting only two to three hours of sleep per night, and Plaintiff briefly suffered a recurrence of his symptoms of depression in 2000, this evidence does not support a conclusion that Plaintiff's impairment significantly limits his ability to sleep. *See Pack,* 166 F.3d at 1306 (evidence that plaintiff slept only three hours per night not sufficient to show substantial limitation on life activity of sleeping because sleep deprivation was not severe and was subsequently controlled, though not cured, by medication).

■ Plaintiff also asserts that his clinical depression substantially limits him in the major life activity of working, because Plaintiff cannot work in jobs that require extended periods of graveyard or night shifts, as compared to the average person in the general population. Plf. Mem. (Doc. No. 103) at 25. In order to demonstrate that an impairment substantially limits the major life activity of working, a plaintiff must show significant restrictions "in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes*" as compared to the average person in the general population. *See Bolton,* 36 F.3d at 942. It is well-settled that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See id.*

Plaintiff claims that his clinical depression prevents him from performing any job that would require him to work predominately graveyard or night shifts. However-

er, courts have held that a plaintiff's inability to work a particular shift, standing alone, does not mean that a plaintiff is "substantially limited" in the major life activity of working. *See, e.g., Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 644–45 (2d Cir.1998) (inability to work late hours or rotating shifts was insufficient to show plaintiff was "substantially limited" in ability to perform a class or broad range of jobs); *Baulos v. Roadway Express, Inc.,* 139 F.3d 1147, 1153 (7th Cir.1998) (inability of truck drivers to work night shift "sleeper duty" did not substantially limit them in major life activity of working). Moreover, the evidence in the record is that Plaintiff worked the graveyard shift on numerous occasions during his term of employment with the Capitol Police Department, which indicates that Plaintiff's impairment does not completely prohibit him from working graveyard or night shifts. Because Plaintiff has not presented evidence that his impairment precludes him from performing a class of jobs or a broad range of jobs in various classes, Plaintiff has not demonstrated that his depression substantially limits him in the major life activity of working. Thus, Plaintiff has failed to show that there exists a genuine issue of material fact that he has an "actual disability" under subsection (A) of the disability definition for purposes of the ADA and the Rehabilitation Act.

**B. Record of Disability**

■ In order for a plaintiff to prove that he has a record of disability under subsection (B) of the disability definition, the plaintiff must show that he has a history of, or has been misclassified as having, an impairment that substantially limits a major life activity. *Rakity v. Dillon Companies, Inc.,* 302 F.3d 1152, 1161 (10th Cir.2002); *Sorensen v. Univ. of Utah Hosp.,* 194 F.3d 1084, 1087 (10th Cir.1999). The record of disability standard is satis-

fied only if the plaintiff actually suffered an impairment that "substantially limited" one or more of his major life activities. *See Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1132 (10th Cir.2003). The Court will ·assess Plaintiff's claim by considering the nature and severity of the impairment, its duration or expected duration, and the permanent or long term impact or expected impact resulting from the impairment. *Id.* (*citing Sorensen,* 194 F.3d at 1087).

██ Plaintiff argues that he has a record of disability because from 1986 to 1988, his impairment of clinical depression substantially limited him in the major life activities of sleeping and working. *See* Plf. Mem. (Doc. No. 103) at 27–29. With respect to the major life activity of sleeping, Plaintiff has come forward with evidence that he suffered from insomnia and sleep deprivation from 1986 to 1988, which resulted in Plaintiff periodically getting only two to three hours of sleep per night. The Tenth Circuit has stated that sleep deprivation which results in a plaintiff getting only two to three hours of sleep per night is not "severe" enough to constitute a substantial limitation on the major life activity of sleeping. *See Pack,* 166 F.3d at 1306. Moreover, because Plaintiff has not presented any evidence regarding the frequency and duration, or long term impacts of his sleep deprivation and insomnia from 1986 to 1988, Plaintiff has failed to show that his clinical depression substantially limited his ability to perform the major life activity of sleeping during this period. *See Heisler v. Metro. Council,* 339 F.3d 622, 628 (8th Cir.2003) (bald assertions that one is substantially limited in a major life activity are insufficient to withstand summary judgment).

With respect to the major life activity of working, Plaintiff provided evidence that his clinical depression caused him to miss work for a period of approximately five months in 1988. The nature and severity of Plaintiff's impairment during 1988 support a finding that they substantially limited his ability to perform the major life activity of working. *See Doebele,* 342 F.3d at 1132. However, the five month period in which Plaintiff actually missed work in 1988 was of limited duration; this weighs against a finding of substantial limitation. *Id.* Once Plaintiff began taking medication for his clinical depression he was able to return to work. The absence of a permanent or long term impact of these impairments also weighs against a finding of substantial limitation. *See id.* Thus, Plaintiff has failed to present sufficient evidence that he has a history of, or has been misclassified as having, an impairment that substantially limited him in a major life activity. *See also Rakity,* 302 F.3d at 1161 (plaintiff's surgery, short hospital stay, and rehabilitation did not, by itself, show a record of substantial limitation in major life activity of working); *Colwell,* 158 F.3d at 646 (record of an impairment that caused plaintiff to miss seven months of work and perform seven years of light duty did not "substantially limit" plaintiff in major life activity of working). Accordingly, Plaintiff has not created a genuine issue of material fact that he has a "record of disability" under subsection (B) of the disability definition.

## C. Regarded as Disabled

██ The Supreme Court has ruled that there are two ways in which a plaintiff may prove that he was "regarded as disabled" under subsection (C) of the disability definition: 1) by showing that his employer mistakenly believed that the plaintiff has a physical impairment that substantially limits a major ·life activity; or 2) by showing than an employer mistakenly believes that an actual, non-limiting impairment substantially limits a major life activity. *See Sutton,* 527 U.S. at 489,

119 S.Ct. 2139. In both cases, it is essential that the employer entertained misperceptions about the plaintiff, which "often result from stereotypic assumptions not truly indicative of ... individual ability." *Id.* In order for a plaintiff to establish that he was "regarded as disabled" with respect to the major life activity of working, the plaintiff must show that the defendant regarded the plaintiff as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes. *See Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1256 (10th Cir.2001). However, the Tenth Circuit has held that "an employer is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Rakity*, 302 F.3d at 1162.

█ Plaintiff argues that under subsection (C), Defendants regarded him as having an impairment that substantially limits him in the major life activity of working, because Defendant USMS determined that Plaintiff was not medically qualified to hold the position of CSO, and because Defendant AKAL terminated Plaintiff's employment on the basis of that determination. *See* Plf. Mem. (Doc. No. 103) at 32. However, because the position of CSO is a single job rather than a class of jobs, this allegation does not support Plaintiff's argument that Defendants regarded Plaintiff as having a substantially limiting impairment. *See Murphy*, 527 U.S. at 524, 119 S.Ct. 2133 (defendant's determination that plaintiff was unable to meet qualifications for single job of UPS mechanic did not show that defendant regarded plaintiff as having an impairment that substantially limited the major life activity of working); *see also Sutton*, 527 U.S. at 493, 119 S.Ct. 2139; *Sorensen*, 194 F.3d at 1089. Plaintiff has put forth no other evidence that Defendants regarded him as being unable

to perform a broad class of law enforcement jobs. Indeed, it is undisputed that Plaintiff is generally employable in the field of law enforcement. This is demonstrated by Plaintiff's record of work in law enforcement prior to his employment as a CSO, as well as his current service as a Park Ranger with the Wyoming State Parks Service and as a part-time Court Security Officer for the Laramie County Courthouse Complex in Cheyenne. *See Murphy*, 527 U.S. at 524, 119 S.Ct. 2133 (undisputed evidence that plaintiff was generally employable in broad class of mechanic jobs demonstrates defendant did not regard plaintiff as disabled when defendant terminated plaintiff from single mechanic job). Furthermore, Defendant AKAL offered Plaintiff alternative employment as a security officer, which also indicates that AKAL did not regard Plaintiff as disabled. *See Sorensen*, 194 F.3d at 1089 (evidence that defendant offered plaintiff alternative work opportunities showed that defendant did not regard plaintiff as having an impairment that substantially limited his ability to work).

█ Plaintiff asserts that Defendant USMS perceived him as being unable to perform the class of jobs which would require Plaintiff to exercise good judgment, think clearly, and respond quickly to emergency situations. Plf. Mem. (Doc. No. 103) at 32. In support of this position, Plaintiff points to Dr. Miller's statement on behalf of USMS that Plaintiff's "history of chronic depression could impair judgment and affect his ability to think clearly and respond quickly to emergency situations." Plf. Mem. (Doc. No. 75) Ex. 7. However, these concerns expressed by Dr. Miller do not show that USMS regarded Plaintiff as disabled. Rather, Dr. Miller's perception of Plaintiff's limitations is confined to his concerns about specific tasks unique to the job of a CSO, and does not show that

USMS regarded Plaintiff as being unable to perform a broad class of jobs that require good judgment, clear thinking, and quick responses to emergency scenarios. *See McGeshick v. Principi,* 357 F.3d 1146, 1150–51 (10th Cir.2004) (defendant's perception that plaintiff could not work on stairwells, ladders, or on ledges to clean windows merely constituted concern about plaintiff's ability to perform one job, not plaintiff's ability to perform broad class of jobs that include such tasks). Thus, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether Defendants regarded Plaintiff as being disabled under subsection (C) of the disability definition.

### 3. *Failure to Accommodate Claim*

■ In his Second Claim for Relief, Plaintiff has also asserted a claim for failure to accommodate under Section 501 of the Rehabilitation Act against Federal Defendants. In order to make out a prima facie case for failure to accommodate, a plaintiff must show that: 1) he is disabled within the meaning of the Rehabilitation Act; 2) he can perform, either with or without reasonable accommodation, essential functions of the desired job; and 3) the employer did not take reasonable steps to reassign a qualified individual to a vacant position." *See Bartee v. Michelin North America, Inc.,* 374 F.3d 906, 912 n. 4 (10th Cir.2004). As discussed above in the analysis of Plaintiff's wrongful termination claims, Plaintiff did not present sufficient evidence to raise a genuine issue of material fact as to whether he was "disabled" for purposes of the Rehabilitation Act. Plaintiff has failed to make out a prima facie case of failure to accommodate against Federal Defendants.

Because Plaintiff has not shown that he is "disabled" for purposes of the ADA and the Rehabilitation Act, the Court concludes that summary judgment should be granted in favor of AKAL and Federal Defendants

with respect to Plaintiff's First and Second Claims for Relief. THEREFORE, it is ORDERED that:

1. Defendant AKAL's Motion for Partial Judgment on the Pleadings is GRANTED;

2. Defendant AKAL's Motion for Summary Judgment is GRANTED;

3. Federal Defendants' Motion for Summary Judgment is GRANTED.